**Stephen USTRAK, Plaintiff–Appellee,**

v.

**James W. FAIRMAN,
Defendant–Appellant.**

No. 87–2057.

United States Court of Appeals,
Seventh Circuit.

Argued April 6, 1988.
Decided July 13, 1988.

Deborah L. Ahlstrand, Chicago, Ill., for defendant-appellant.

Gregory E. Pelini, Pelini & Sheffler, Champaign, Ill., for plaintiff-appellee.

Before POSNER, FLAUM, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

In 1980 Stephen Ustrak, who was then an inmate of an Illinois state prison, brought a civil rights suit against the warden. At the request of the district court, see 28 U.S.C. § 1915(d), the law firm of Pelini & Sheffler undertook to represent Ustrak, and in 1981 filed an amended complaint seeking almost $1 million in compensatory and punitive damages. The complaint was in six counts. Two were dismissed on motion for summary judgment; the other four were tried in a three-day jury trial in 1984. The counts that were tried concerned three incidents: (1) the denial in June 1979, allegedly on racial grounds (Ustrak is white), of Ustrak's request for a job in the prison library; (2) alleged racial discrimination in a disciplinary matter in July 1980; and (3) the denial in October 1980, alleged to be in retaliation for the exercise of free speech, of Ustrak's request to be transferred to a less restrictive part of the prison. The jury found liability and awarded Ustrak almost $50,000 in compensatory and punitive damages, but we reversed on all but the retaliation count and reduced his damages to $1 in compensatory damages and $1,000 in punitive damages. 781 F.2d 573 (7th Cir.1986).

The inevitable attorney's fee proceeding followed. Ustrak sought an award of more than $50,000 in attorney's fees, based on 561.40 hours of lawyers' time at $90 per hour and 139.15 hours of "law clerk" time (a "law clerk" being a law student working for the firm part time) at $30 per hour. The district court reduced the fee to $75 an hour for the lawyers and $25 for the students, and reduced the number of hours by one-third to reflect the modest results of the litigation. The upshot was an award of some $30,000 in fees, from which the warden appeals under 28 U.S.C. § 636(c)(3). He argues that the district court erred both in failing to exclude hours that were clearly excessive in relation to work performed and in failing to reduce the total number of hours by five-sixths rather than one-third, to reflect the fact that Ustrak had prevailed on only one count of a complaint that contained six unrelated counts.

Fee litigation has become a heavy burden on the federal courts. It can turn a simple civil case into two or even more cases—the case on the merits, the case for fees, the case for fees on appeal, the case for fees for proving fees, and so on ad infinitum, or at least ad nauseam. See *Muscare v. Quinn*, 680 F.2d 42 (7th Cir.1982). There are alternatives to requiring the courts to determine a reasonable fee on an ad hoc basis in every case. The courts of Alaska—the first state to abandon the "American rule" (each party bears his own expenses of litigation) in favor of a rule requiring the losing party in (virtually) every civil case to reimburse the winner's attorney's fees—use in most cases a schedule of fixed fees rather than determining fees on an ad hoc, case-by-case basis. Countries that have long shifted the costs of litigation to the loser have learned how to do so with a minimum of satellite litigation and other travail; England, for example, uses taxing masters rather than ordinary judicial personnel to assess fees. The English and Alaskan experiences are described in Tomkins & Willging, Taxation of Attorneys' Fees: Practices in English, Alaskan, and Federal Courts 5–47 (Federal Judicial Center 1986); see also Pfennigstorf, *The European Experience with Attorney Fee Shifting*, 47 Law & Contemp.Prob. 37 (Winter 1984).

But for now we must continue to slog our way through these fee cases as best we can. And in the present case that means considering not only the interesting general question of the proper treatment of cases where the plaintiff wins half a loaf (or less), but also specific challenges to the details of the district court's order—though, of course, only those challenges that the defendant raised in the district court. Another interesting question, discussed at the end of this opinion, concerns the award of fees on appeal where the judgment is modified rather than affirmed in its entirety.

█ In reviewing the specific challenges we naturally give great deference to the views of the district court. If ever there was a case for reviewing the determinations of a trial court under a highly deferential version of the "abuse of discretion" standard, it is in the matter of determining the reasonableness of the time spent by a lawyer on a particular task in a litigation in that court. Not only is the trial court in a much better position than the appellate court to make this determination, but neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny. Nevertheless certain items in the list of challenged allowances leap out at us and cannot be upheld even under the most deferential standard of review.

█ 1. The district court allowed 38 hours of attorney time for preparation for the oral argument of the appeal. Almost a week's work is far too much for preparing to argue an appeal in a case involving simple facts, a three-day trial, and legal issues of limited (though not trivial) scope and novelty. The law firm's excuse is that the lead counsel (Pelini) was unable to argue the appeal because of a previously scheduled trial, so that another member of his firm had to be gotten up to speed for the argument. Pelini should have informed us of any potential conflicts in his schedule before we set the case for argument; he knew the trial date before then. Our Circuit Rule 34(b)(3) states that "requests by counsel, made in advance of the scheduling of an appeal for oral argument, that the court avoid scheduling the oral argument for a particular day or week will be respected, if possible." No such request was made, bringing into play Rule 34(b)(4): "Once an appeal has been scheduled for oral argument, the court will not ordinarily reschedule it. Requests under [Rule 34(b)(3)] should therefore be made as early as possible." Counsel either was careless or gambled on our setting the case on a day when he would be free. We shall knock 22 hours off this request.

█ 2. The district court allowed 108.5 hours of attorney time and 31.95 hours of student time for the preparation of the plaintiff's two fee petitions. This is the tail wagging the dog, with a vengeance. For every hour spent litigating the merits the

plaintiff's attorneys devoted almost 15 minutes to preparing a petition requesting fees for that hour. An even higher fraction of the law students' time was spent on the fee petitions—18 minutes for every hour of work on the merits. The fee petitions are marvels of misplaced ingenuity and thoroughness, rehearsing in great detail basic principles well known to the district court (compare *Lightfoot v. Walker*, 826 F.2d 516, 522 (7th Cir.1987)), and reinforcing our impression that lawyers litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue. (The briefs on the merits in this case were greatly inferior to the briefs on the fee issues.) We shall disallow two-thirds of the lawyer and student hours allowed for the preparation of the fee petitions. The allowance is still a generous one; compare *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir.1988), where the prevailing party submitted a bill for only 1.6 hours for the preparation of his request for an award of attorney's fees.

■ 3. The plaintiff concedes that 1.3 hours of student time were inadvertently allowed. He does not confess error on the point, however; we shall do so for him.

■ 4. The district court allowed 8.3 hours for review by a law student of this court's rules. The purpose of the review is nowhere disclosed. We cannot imagine what purpose is served by sitting a student down in front of our rules for a day, unless to torture him. We shall disallow this item in its entirety.

■ We conclude that only 467.1 hours of attorney time, and 108.2 hours of student time, should have been allowed, and move to the question what further reduction if any should have been made to reflect the fact that Ustrak lost on five of his six counts and recovered damages that were modest both absolutely and in relation to what he had sought in his complaint. The Supreme Court prescribed the basic approach to be taken in such cases in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); see also *Lenard v. Argento*, 808 F.2d 1242, 1245–46 (7th Cir.1987). Factually unrelated claims are treated as separate lawsuits, and there-

fore if the plaintiff loses on such a claim he is not to be reimbursed for the attorney's fees allocable to it. But where "the plaintiff's claims of relief ... involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, ... the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 435, 103 S.Ct. at 1940. Unfortunately the present case straddles the Court's two classes. The only claim on which Ustrak prevailed is legally and factually distinct from his other claims, yet much of counsel's time necessarily was devoted to the litigation as a whole—a good example being the time taken to pick a jury. The procedure suggested by the defendant, of dividing the fee request by six because Ustrak prevailed on one of six unrelated grounds, implies that the trial should have lasted only three hours (it lasted 18 hours). No jury trial lasts three hours. The district court reduced the fee request by a third, but without offering a reason beyond a general reference to lack of success.

■ A partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds within the meaning of *Hensley*. Under this approach we ask how much lawyer and student time Ustrak would have consumed had he brought this suit only to challenge the defendant's refusal to transfer him to a less restrictive part of the prison. Ustrak would still have been entitled to a jury trial and well advised to demand one. The defendant would still have had to be deposed. It is doubtful that the trial could have been compressed to fewer than two days. Ustrak's briefs on appeal would have been shorter, but not five-sixths shorter, for the space allotted to each issue in an appeal that presents six issues is naturally going to be less than would be optimal in a single-

issue appeal. Since the case would not have taken so long to try, the petition for attorney's fees would have required less time to prepare; but since the case would not have taken a sixth as long to try, the fee petition could not have been prepared in a sixth of the time either.

No exact calculation of the lawyer and law-student time reasonably required to prepare, litigate, and appeal this case (and to prepare and defend a fee petition) if the case had been confined to its single meritorious issue is possible; our best estimate of this elusive counterfactual is that the time would have been half as great as it turned out to be with the additional, unmeritorious issues. So we take the hours we have allowed, multiply by the unchallenged billing rates for the attorneys and law students respectively, divide by two, add costs (not questioned), round to the nearest hundred dollars to avoid creating a delusive impression of exactness, and by this route arrive at a total of $21,100, which we deem to be the reasonable attorney's fee, and costs, to which Ustrak is entitled; as so modified, the district court's judgment is affirmed.

■ It might seem that a fee 21 times as great as the damages that the plaintiff obtained (a mere $1,001, remember) *must* be excessive in relation to results obtained, necessitating a further discount. Cf. *Illiois Welfare Rights Organization v. Miller*, 723 F.2d 564, 567–69 (7th Cir.1983). But the value of Ustrak's victory cannot be gauged by the modest size of the damages awarded. A judicial decision that finds a violation of constitutional rights and punishes the perpetrator with an award of punitive damages not only vindicates constitutional principles but is a deterrent to future violations, to the benefit not only of the plaintiff but of others in similar situations. See, e.g., *Aubin v. Fudala*, 782 F.2d 287, 291 (1st Cir.1986); *Lenard v. Argento*, *supra*, 808 F.2d at 1248. If these were not permissible considerations, no attorney's fees could be awarded in a case where the plaintiff obtained only nominal damages. That is not the law. See, e.g., *Williams v. Mensey*, 785 F.2d 631, 640 (8th Cir.1986).

Once it is determined that civil rights claims of small cash value nevertheless have enough social value to warrant litigation, it follows that attorney's fees awards will sometimes exceed the damages awards in such cases—and the Supreme Court therefore has held that the damage award is not a ceiling on the fee award. *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). There is an irreducible fixed cost to litigation. If the plaintiff cannot recover that cost in an award of attorney's fees, he will find it difficult to hire a lawyer. In fixing a reasonable attorney's fee in this case at a bit more than $21,000 we have estimated in effect the minimum cost of litigating such a case.

■ It may next be objected that rather than computing the reasonable attorney's fee ourselves we should direct the district court to redetermine the fee in conformity to the principles in this opinion. There is great theoretical appeal to such an approach in light of our earlier point that the district court is in a much better position than this court to evaluate the reasonableness of a fee submission. The practical difficulty is that such an approach would prolong litigation on what to begin with is a collateral matter, and might generate additional appeals. Practice has trumped theory; for in many cases in this and other circuits the court of appeals has made the adjustment in the fee award that it thought necessary, without bothering to remand the case. See, e.g., *Charles v. Daley*, 846 F.2d 1057, 1076–1077 (7th Cir. 1988); *Lynch v. City of Milwaukee*, 747 F.2d 423 (7th Cir.1984); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951–60 (1st Cir.1984); *Green v. Francis*, 705 F.2d 846, 850 (6th Cir.1983) (per curiam); cf. *Copeland v. Marshall*, 641 F.2d 880, 901–02 (D.C.Cir.1980). No right to jury trial, or other rights, are infringed by our bringing this litigation to a close; and "in a case which has been years in litigation, it makes no sense to remand and require even further expenditure of time and money." *Grendel's Den, Inc. v. Larkin, supra*, 749

F.2d at 951; to similar effect see *Charles v. Daley, supra,* at 1077.

■ To ensure that this really is the end of the case we direct Ustrak to submit to the clerk of this court within 15 days a statement of the fees he reasonably incurred in defending against this appeal. A civil rights plaintiff is entitled to fees for successfully defending in the court of appeals a favorable judgment (or fee award) obtained in the district court. *Bond v. Stanton,* 630 F.2d 1231, 1234–35 (7th Cir. 1980). And we can determine those fees ourselves; we need not require the district court to make the determination. *Ekanem v. Health & Hospital Corp.,* 778 F.2d 1254, 1257 (7th Cir.1985). But is Ustrak really the prevailing party on this appeal? Having persuaded us to cut down the fee award by a third, the warden could be said to be a prevailing party too. Indeed, if an appeal were analogized to an independent civil rights suit, the warden, having won *something* on appeal, would be viewed as *the* prevailing party, albeit his success was only partial.

■ This is not the correct approach. As the prevailing party in the underlying civil rights action, Ustrak is entitled to reimbursement of fees reasonably incurred, whether they are fees incurred in the original civil rights trial and appeal, fees incurred in proving those fees, or fees incurred in defending the district court's fee award. Since the reasonableness of a fee is a function in part of the success achieved by the expenditure, lack of success in obtaining fees or in defending a fee award is certainly material in deciding how large the reimbursement should be. See, e.g., *In re Burlington Northern, Inc., Employment Practices Litigation,* 832 F.2d 430, 432–35 (7th Cir.1987); *Muscare v. Quinn, supra,* 680 F.2d at 44; *Hays v. Sony Corp.,* 847 F.2d 412, 419–20 (7th Cir. 1988); *Preston v. Thompson,* 565 F.Supp. 310, 312 (N.D.Ill.1983). But a distinction should be made between an appellant and an appellee. A civil rights plaintiff who, having won a judgment in the district court, appeals, seeking a greater victory—and fails utterly in his appeal—will be hard pressed to demonstrate an entitlement to his attorney's fees on appeal, even though he remains the prevailing party in the underlying litigation. See *Levka v. City of Chicago,* 605 F.Supp. 197 (N.D.Ill.1985). But when the defendant appeals and the plaintiff incurs expenses in defending against the appeal that are reasonable even though they are not crowned by complete success, ordinarily he should be entitled to reimbursement of those fees; he had no choice but to incur them or forfeit his victory in the district court.

■ We conclude that Ustrak is entitled, prima facie, to reimbursement of his entire fees in this court. The defendant may of course submit specific objections to particular items of expense, for a civil rights plaintiff has no more right to make his opponent pay for extravagant expenditures in defending an appeal than to make him pay for extravagant expenditures in obtaining a favorable judgment in the first place. But the fact that we have cut down the district court's fee award does not in itself justify trimming the award for fees in this court, given Ustrak's status as an appellee defending with substantial although not complete success a district court's judgment in his favor.

MODIFIED AND AFFIRMED.