Francis MUSCARE, Plaintiff-Appellant,

v.

Robert J. QUINN, Commissioner of the Chicago Fire Department, Defendant-Appellee.

No. 81–1604.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1982.

Decided June 8, 1982.

See also, 7 Cir., 614 F.2d 577.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The question we decide in this case is the proper standard for appellate review of a district court's refusal to award attorneys' fees to a civil rights plaintiff for the time spent in establishing the attorneys' fees to which he is entitled for having prevailed on the civil rights claim itself.

The appellant in this case is a Chicago fireman who in 1975 was suspended for 29 days because he refused, in violation of a fire department regulation, to shave off his goatee. He brought suit under 42 U.S.C. § 1983, contending that the regulation was unconstitutional and that in any event he should have been given a hearing before being suspended. The district court rejected both contentions and dismissed the complaint. This court reversed. It held that the plaintiff was entitled to a hearing, but did not reach the issue whether the regulation was constitutional. 520 F.2d 1212 (1975). The Supreme Court granted certiorari but then dismissed the writ as improvidently granted, 425 U.S. 560, 96 S.Ct. 1752, 48 L.Ed.2d 165 (1976), in an opinion indicating that the regulation was constitutional in light of *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), where the Court had just upheld an almost identical regulation. See 425 U.S. at 562, 96 S.Ct. at 1753. The district court then awarded the plaintiff backpay and related relief for the denial of his right to a hearing. The defendant did not appeal. The case on the merits was over. That was on December 12, 1976.

The plaintiff then moved the district court for an award of attorneys' fees under 42 U.S.C. § 1988, which allows the court, "in its discretion," to award "a reasonable attorney's fee" to "the prevailing party" in a section 1983 suit. The plaintiff asked for $41,000 in attorneys' fees (all dollar figures in this opinion are rounded off to the nearest thousand). The district court cut him down to $25,000. The defendant appealed

Kalman D. Resnick, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for plaintiff-appellant.

Jerome A. Siegan, Asst. Corp. Counsel, Chicago, Ill., for defendant-appellee.

and this court reversed, holding that the plaintiff had prevailed on only one of his two claims and was entitled to attorneys' fees only for the time spent on that claim. 614 F.2d 577 (1980). On remand, the district court cut down the attorneys' fee award to $8,000. This order was not appealed. So ended the first round of the attorneys' fee litigation.

The plaintiff then moved the district court to award him $10,000 in attorneys' fees for time spent in litigating his original claim for attorneys' fees. The district court refused to award any more fees, and this appeal followed.

Both the plaintiff and the defendant pose the issue as whether the plaintiff was "the prevailing party" in the litigation over the original claim for attorneys' fees. The plaintiff claims that he was the prevailing party because, in the end, he was awarded $8,000. He goes further: in answer to a question from the bench at oral argument he stated that even if he had in the end been awarded an attorney's fee of $1, he would be the prevailing party in the fees litigation and would therefore be entitled, by analogy to *Skoda v. Fontani*, 646 F.2d 1193 (7th Cir. 1981), to the $10,000 in time spent to get that $1. The defendant on the other hand points out that the plaintiff originally asked for $41,000 and suggests that any lesser award would show that the plaintiff had not prevailed.

Though there is some case support for this way of posing the question of fees for proving fees, see *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1126 (9th Cir. 1981), this circuit interprets "the prevailing party" referred to in section 1988 as the party who prevails on the merits of the underlying litigation. See *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980); cf. *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). That is Muscare. He was declared the prevailing party when this court held that he was entitled to an award of attorneys' fees, albeit a smaller one than he had sought; and part of the attorneys' fee to which a prevailing party is, in the discretion of the court, entitled is for time spent in proving his attorneys' fees. This approach avoids semantic quibbles over how much of his original fee request the plaintiff has to obtain to be deemed a prevailing party in the fee contest and directs the district court's attention where we think it should be directed, to the question of the reasonableness of a second award in light of all the circumstances of the case.

For rather obvious practical reasons we are loath to disturb a ruling by a district judge on a request for second-round attorneys' fees. The consequence if we should reverse and remand for an award of additional fees is all too predictable: however little the plaintiff is awarded on remand he will move the district court to award him attorneys' fees for the time spent in prosecuting this appeal, and if the district court denies his motion he will be back up here. Every civil rights litigation will be like a nest of Chinese boxes. The outside box is the litigation of the civil rights issue itself. Within it is the litigation over the fees incurred in the litigation over the merits—ordinarily a lesser litigation, as our metaphor implies, though in this case the stakes in each of the two rounds of fee litigation have been greater, at least in monetary terms, than the stakes in the original civil rights litigation. Within the initial fee litigation will be another litigation—usually a smaller one, here again a bigger one—over the attorneys' fees incurred by the plaintiff in the initial fee litigation. And so on without necessary end.

The present case illustrates our concern. It began as we said in 1974. Without meaning to disparage the plaintiff's civil rights claims—for he prevailed on one of them—we confess to some doubt whether a claim arising out of a fireman's refusal to shave off his goatee in accordance with a fire department regulation whose constitutionality has since been established is the stuff out of which great constitutional cases are made. In any event, that litigation ended in 1976 with the payment of modest backpay to the plaintiff. The litigation had taken two years. Then the fees litigation began and is now in its sixth year.

The $10,000 that the plaintiff is seeking in attorneys' fees in this latest round represents a substantial expenditure of attorney time and effort. The cause of that expenditure is the extravagant fee claim with which the plaintiff started—$41,000, five times the fee that he ultimately received and that he was sufficiently happy with (or resigned to) not to appeal. Since the defendant did not appeal from that fee award either, it is likely that if the plaintiff had asked for $8,000 originally he would have gotten the entire amount without having to incur any additional attorneys' fees. The plaintiff (realistically, his counsel) showed questionable judgment in asking for $41,000 in fees when he had prevailed on only one of his claims on the merits—and that the less important one, as it got him some backpay but not the right to wear a goatee, which is after all what precipitated this lawsuit.

The plaintiff argues that unless he receives an award of fees for proving fees civil rights defendants will be encouraged to drag out the attorneys' fees phase (or phases) of civil rights litigation in order to make the plaintiff's victory on the merits a Pyrrhic one. See, e.g., *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979). He offers this case as an illustration. It is not an apt one. The defense of the merits saved the fire department's regulation. The defense against the plaintiff's initial fee claim got that claim cut down by 80 percent. We do not think the defendant has been stonewalling.

■ From this review of the history of the litigation it is clear that the district judge had discretion to deny the plaintiff's second fee request in its entirety. "The exercise of discretion ... gives the district judge great leeway. If the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation ...." *Gagne v. Maher, supra*, 594 F.2d at 344. See also *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978). But there is a question whether the judge exercised his discretion. His opinion is not entirely clear. At times

it seems that he thought the only fees being asked for were for time spent on the appeal from the district court's original fee award, which is not correct, and that he was denying any fees for such time because he did not think the plaintiff was the prevailing party in that appeal, which we have said is the wrong standard. If that was all there was to the district judge's opinion we would have to reverse. But other parts of his opinion suggest that the judge applied the correct standard. He described as issues for him to decide "whether time spent litigating the attorneys' fee issue is compensable *in the circumstances of this case*" (emphasis added), and "whether the sum of [$10,000] is a reasonable attorneys' fees expenditure, bearing in mind that the attorneys' fee petition being litigated at the appellate level resulted in an award of [$8,000]." He said, correctly, that, "As a general rule, time expended on appeals is compensable." See, e.g., *Bond v. Stanton, supra*, 630 F.2d at 1235. But, he added, "The long history of this case and the circumstances taken in their totality do not justify the awarding of additional fees to plaintiff." We wish the judge had expatiated on "the long history of this case" and "the circumstances taken in their totality." But his impatience is understandable, and taking the opinion as a whole we cannot say that he failed to exercise his discretion, and we certainly cannot say that he abused it.

■ Three appeals in a case about a goatee are enough. Only in extraordinary circumstances will we disturb a district judge's exercise of his discretion in awarding or denying fees for establishing fees. No extraordinary circumstances warrant such intervention here. The judgment is therefore

AFFIRMED.